[S. F. No. 4530. Department One.—May 11, 1908.]

## CARL AUGUST NILSON, Appellant, v. ANTONIO A. SARMENT, Respondent.

HUSBAND AND WIFE—TITLE IN WIFE—CONSTRUCTION OF CODE—PRE-SUMPTION—AMENDMENT NOT RETROACTIVE—COMMUNITY PROPERTY.—The amendment to section 164 of the Civil Code in 1889, creating a presumption in favor of separate property where title is taken in the wife's name, is not retroactive; and where the deed was taken in the wife's name prior to that amendment the presumption is that she held it as community property, and the deed alone cannot show the contrary.

ID.—SEPARATE PROPERTY OF WIFE.—In such case, in order to constitute the property so taken in her name the separate property of the wife, it must be shown either that it was purchased with her separate funds, or that it was given to her by the husband.

ID.—GIFT BY HUSBAND—FINDING AGAINST EVIDENCE.—Where the court found upon sufficient evidence that the property lived upon by husband and family and taken in the wife's name, was acquired with community funds paid for by the husband; but further finds that the property was given to her by the husband, the latter finding must be deemed against the evidence where the husband, without conflict, testified that he bought it for a home, and did not intend to make a gift thereof to the wife, and no circumstances appear sufficient to justify the inference that it was her separate property, or to overcome the presumption that it was community property.

ID.—CIRCUMSTANCES NOT OVERCOMING PRESUMPTION.—The circumstances that the deed described the land as encumbered by a mortgage, to be paid by the grantee, where it was in fact fully paid by the husband with community funds, and that the property was insured in the wife's name, and the loss was made payable to her, and that deeds of trust were executed by husband and wife to secure loans, with a proviso for re-conveyance to the wife, were none of them sufficient to overcome the presumption that the record title left in the wife's name, was community property.

ID.—EFFECT OF INSURANCE IN WIFE'S NAME.—Where the house and lot standing in the wife's name was not her separate property, the assumption that the insurance money was payable to her in the event of loss by fire, would not make the money her separate property, any more than the burnt house was such.

ID.—TERMINATION OF DEEDS OF TRUST.—The provision for reconveyance, or any reconveyance actually made, could have no legal effect otherwise than to make the record title clear, since upon payment of the debt, the purposes of the trust ceased and the property at once, without a reconveyance, revested in the party or parties who had owned it before. The record title left in the wife, is no evidence that she held it otherwise than as community property.

ID.—CLAIM OF SEPARATE PROPERTY BY WIFE—PURPOSE OF SALE—OBJECTION BY HUSBAND.—The claim by the wife that the property was hers, and that she was about to sell it, and the objection of the husband that she could not sell it unless he signed the deed, cannot be construed as an admission on his part that the land was her separate property, or that she had the right to sell it.

ID.—HUSBAND NOT ESTOPPED AGAINST WIFE'S GRANTEE—PROVISION FOR SURPLUS ON SALE BY TRUSTEE.—The husband is not estopped as against the grantee of the wife by a mere provision in the deeds of trust that in case of sale by the trustees, the surplus, if any, should be paid to the wife, from claiming the property as community property against such grantee, where the latter knew that his grantor was a married woman and was bound to ascertain, at his peril, whether the property was community property, and he did not rely upon any statement made by the husband, but relied upon the wife's warranty of title in her deed, it being matter of common knowledge that such deeds are unusual in this state.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Fred L. Stewart, and C. E. Arnold, for Appellant.

Sam Bell McKee, and F. L. DeFreitas, for Respondent.

SLOSS, J.—This is an action to quiet title to a parcel of land in the city of Oakland. The complaint alleges that plaintiff and Emma Christina Nilson were married in 1877, and ever since have been husband and wife; that in July, 1884, plaintiff purchased the land in question from one John Ziegenbein; that the deed from Ziegenbein named Emma Christina Nilson as sole grantee, but that the whole consideration for the conveyance was paid by plaintiff out of moneys earned by him during his marriage, and that the deed was taken in the name of Emma Christina Nilson, as grantee, for the marital community of plaintiff and his said wife. It is further alleged that in January, 1905, Emma Christina Nilson executed and delivered to defendant an instrument purporting to convey said land to him, and that defendant claims an interest in the land by virtue of said instrument.

The answer alleges that Emma Christina Nilson purchased the property with her separate funds, that the deed to her was made with plaintiff's consent, and that plaintiff, at the time of the purchase from Ziegenbein, gave to his wife whatever interest he had in the property. It is further averred that Emma Christina Nilson entered into the possession and retained possession of the property until her deed to defendant; that during all that time she, with plaintiff's knowledge, approval, and consent, asserted her separate ownership of the land and dealt with it as her separate property; that she insured the building on the land, and had the loss mentioned in the policies made payable to her, and that, on various occasions, she borrowed money, giving as security therefor deeds of trust executed by herself and the plaintiff, such deeds of trust providing that, in the event of payment, the property should be reconveyed to her, and in case of default and sale, any surplus of the proceeds should be paid to her. The defendant alleges that the plaintiff's wife represented to him that the property was her separate property, that he caused the title to be searched and was advised that the title was in her, and upon careful inquiry as to the ownership, learned that she had, with plaintiff's consent, claimed the property as her own and dealt with it as her separate property; whereupon

the defendant purchased it of her, paying her the sum of two thousand three hundred dollars. The defendant also filed a cross-complaint, asking judgment for the possession of the property and damages for its withholding.

The court found against plaintiff's allegation that the land was, or ever had been, the community property of himself and his wife. It found that the whole consideration was paid by plaintiff out of moneys earned by him during his marriage with his said wife, but that plaintiff directed Ziegenbein to execute the deed to Emma Christina Nilson and gave to her whatever interest he had in said property. Judgment in favor of defendant, quieting his title against plaintiff and awarding him the possession of the premises, together with the value of their use and occupation, followed. The plaintiff appeals from the judgment and from an order denying his motion for a new trial.

The principal point urged by appellant is that the evidence is insufficient to justify the finding that the property was not community property but that it was separate property of plaintiff's wife. Sections 162 and 163 of the Civil Code define the separate property of the spouses as that owned by them, respectively, before marriage, and that acquired afterward by gift, bequest, devise, or descent. By section 164 all other property acquired after marriage by husband or wife, or both, is declared to be community property. In 1889 this section was amended by the addition of the words, "but whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property." Prior to the adoption of this amendment the presumption was just the opposite; that is to say, property conveyed to either husband or wife after their marriage by a conveyance (other than a deed of gift) was presumed to have vested the title in the marital community. (*Tolman* v. *Smith*, 85 Cal. 280, [24 Pac. 743]; *Smith* v. *Smith*, 12 Cal. 224, [73 Am. Dec. 533]; *Meyer* v. *Kinzer*, 12 Cal. 247, [73 Am. Dec. 538]; *Ramsdell* v. *Fuller*, 28 Cal. 38, [87 Am. Dec. 103]; *Morgan* v. *Lones*, 78 Cal. 58, [20 Pac. 248]; *Jordan* v. *Fay*, 98 Cal. 264, [33 Pac. 95]; *Gwynn* v. *Dierssen*, 101 Cal. 563, [36 Pac. 103]; *Lewis* v. *Burns*, 122 Cal. 358, [55 Pac. 132].) The property in question was acquired by the Nilsons (or one of them) in 1884. It

is thoroughly settled that the amendment of 1889 is not retroactive and has no application to property acquired by husband or wife before its enactment. (*Jordan* v. *Fay*, 98 Cal. 264, [33 Pac. 95]; *Gwynn* v. *Dierssen*, 101 Cal. 563, [36 Pac. 103]; *Lewis* v. *Burns*, 122 Cal. 358, [55 Pac. 132].) In *Jordan* v. *Fay* the court, speaking of this amendment, said: "But the rule declared by the statute was more than a rule of evidence; it was a rule of property as well; and we do not think the legislature intended or had the power to change it so that it would be retroactive in effect and disturb titles already vested."

Was the finding as to the separate character of the property in question supported by any substantial evidence tending to overthrow the presumption resulting from the conveyance to a married person? To make the land the separate property of the wife, it was necessary, either that it should have been acquired with her separate funds or that it should have been given to her. It is to be remembered that the court finds, contrary to the averment of the answer, that the property was paid for with the community funds, and the conclusion that it became the separate property of the wife must, therefore, rest upon the further finding that plaintiff gave to his wife whatever interest he had in said property. There is nothing in the evidence before the court to show that any such gift was ever made. It appears that plaintiff's wife left his home about the time she made her deed to defendant, and she was not a witness at the trial. Nor was any testimony given by Ziegenbein, the original grantor. The only witnesses who could give direct testimony regarding the circumstances surrounding the making of the deed in 1884 were the plaintiff and his brother. Both testified that the deed was made to run to Emma Christina Nilson at the suggestion of Ziegenbein, who said that "it would make no difference," and that neither she nor the plaintiff could sell the land without the signature of the other. This explanation, which is not in itself improbable, was not contradicted, but, even if we disregard it, we are left with the deed itself, which, if unexplained, raises the presumption that the land became community property, notwithstanding the fact that the wife was named as grantee. The plaintiff testified that he bought the property for a home for himself and his family, and that it was not his

intention to make a gift of it to his wife. This clear and positive testimony regarding the transaction is not directly contradicted, and there is no support for the finding against it unless it can be found in some circumstances which are claimed to justify the inference that the land became the separate property of the wife.

Much stress is laid on the fact that Ziegenbein's conveyance described the land as "encumbered by a mortgage . . . on which there is now due the sum of $2900 to be paid by the party of the second part." The party of the second part was the wife, and it is argued that this shows that the wife became bound to pay the mortgage, and thus tends to support the contention that the husband intended to make the property hers. It appears, however, that the entire purchase price was only two thousand nine hundred dollars. Nothing was to be paid over and above the face of the mortgage, and in fact one thousand two hundred dollars of this had been paid by plaintiff before he ever received the deed. The most that can be claimed for the clause quoted is that it shows that the consideration was to be paid by the wife from her separate property. In view of the uncontradicted evidence that no part of the consideration was so paid, but that the plaintiff paid part of it before the execution of the deed, and eventually paid it all with community property (as is found by the court), the insertion of this clause by the grantor cannot be regarded as supporting the finding that the land was the separate property of the wife. It certainly does not tend to show a gift, which alone can be contended for under the findings.

No greater force is to be attributed to the evidence that insurance was affected by the plaintiff, and that by the policies the loss was made payable to the wife. In view of the fact that the title stood of record in her name, this was the natural and ordinary course to pursue. If the house and lot, although standing in her name, were not her separate property, the circumstance that insurance money would have been payable to her in the event of loss by fire would not make that money her separate property any more than the burnt house was. In *Lewis v. Burns*, assessment-lists, assessing certain lots to the wife, were sworn to by the husband. This was held not to be an admission that they were her separate property. The method of insuring in this case stands on the same ground.

CLIII Cal.—34

The same reasoning applies to the deeds of trust made by plaintiff and his wife to secure loans of money. The provision for reconveyance, or any reconveyance actually made, had no legal effect beyond that of making the record title clear, since, upon payment of the debt, the purposes of the trust ceased, and the property at once, without any reconveyance, revested in the party or parties who had owned it before. (*Tyler* v. *Currier*, 147 Cal. 31, [81 Pac. 319]; *MacLeod* v. *Moran*, (Cal.) 94 Pac. 604.) The provisions for reconveyance or payment of surplus, contained in these deeds of trust, like the mode of effecting insurance, merely indicated that it was not desired to change the record title. That title was in the wife, but these instruments are no evidence that she held it, or that her husband recognized her as holding it, as separate rather than as community property.

The only other circumstance relied on by respondent is that the wife claimed the land as her separate property. Her claims are, of course, in no way binding on the plaintiff except in so far as they may have been made with his knowledge and assented to by him. All that appears in this connection is that plaintiff's wife told him several times within a year or two before her sale to defendant that she would like, or was about to sell the property, to which he had objected, saying that she could not sell it unless he signed the deed. This cannot be construed as an admission on his part that the land was her separate property or that she had the right to sell it.

It is not questioned that where a husband purchases property with community funds, and directs the conveyance to be made to his wife, *with the intent to make it her separate property*, the deed will operate to vest the property in her as her separate estate. (*Peck* v. *Brummagim*, 31 Cal. 441, [89 Am. Dec. 195]; *Woods* v. *Whitney*, 42 Cal 358; *Jackson* v. *Torrence*, 83 Cal. 521, [23 Pac. 695].) But to have that effect, there must, in the case of a deed executed before the amendment of 1889, have been something more than the mere fact that the wife was named as grantee. There must be something, appearing either in the deed or elsewhere, to show an intent to make the property the separate estate of the wife. Here we find that the plaintiff, desiring to purchase a home for himself and his family, bought the land in question, there being a house upon it; that, at the suggestion of the vendor

he took the deed in the name of his wife; that, with his family, he occupied the premises as his home continuously from the time of the purchase; that he paid, out of his earnings, the purchase price of the property, the premiums on insurance, and all loans secured by the property. He testifies that he never intended to make a gift to his wife. His dealings with the property were such as would, in the ordinary course of business be dictated by the fact that the record title stood in his wife's name, and were in no way inconsistent with the community character of the property. There is no substantial evidence tending to show that he made a gift to his wife of his interest in the property, and the presumption that it was community property, aided, as it was, by the undisputed testimony of a party to the transaction, cannot, therefore, be said to have been overthrown.

It is urged that plaintiff is estopped, as against defendant, to show that the property is community property. This contention is based in part on the provision in the deeds of trust that in case of sale, the surplus, if any, should be paid to the wife. Such provision was said, in *Hoeck* v. *Grief*, 142 Cal. 119, [75 Pac. 670], to constitute an estoppel in favor of the wife. But this declaration was not necessary to the decision, and this court, in denying a rehearing in *Tyler* v. *Currier*, 147 Cal. 31, [81 Pac. 318], so stated, adding that in its opinion, what was said in this connection in *Hoeck* v. *Grief* was "not a correct statement of the law." Indeed, it seems clear that neither the execution of the deed of trust, nor any of the other dealings of plaintiff with the property, should be held to estop him from asserting its character as community property. Apart from other considerations, two essential elements of an estoppel are, 1. That the party asserting it must have been ignorant of the true state of facts and of the means of acquiring knowledge of them, and, 2. That he must have relied upon the statement or admission of the party whom he seeks to bind by such statement or admission. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279.) Neither of these elements existed in this case. The respondent knew from the Ziegenbein deed, which was of record, that his grantor was a woman. He had actual notice that she was a married woman. This was enough to put him on inquiry, and to compel him to ascertain, at his peril, whether the property was

community property. (*Ramsdell* v. *Fuller*, 28 Cal. 44, [87 Am. Dec. 103]; *McComb* v. *Spangler*, 71 Cal. 418, [12 Pac. 347].) Furthermore, plaintiff was actually residing on the property, but defendant, before purchasing, made no inquiry of him as to the state of the title. Nor did the defendant in fact rely upon any supposed admission of plaintiff that the property belonged to his wife in her separate right. He took from Mrs. Nilson a deed containing a covenant of warranty of title. It is a matter of common knowledge that such deeds are unusual in this state. A real estate agent, who represented the defendant in the transaction with Mrs. Nilson, testified that he had drawn the deed and that the reason he had made it in the form of a warranty deed was because Mr. Nilson did not sign it. There could be no stronger proof that the defendant (who was bound by the knowledge and the acts of his agent) knew that Mrs. Nilson had a husband who might have some claim upon the property and that, instead of relying upon any representation that she was the sole owner of the property, he tried to protect himself against a possible claim on the part of her husband by taking a warranty deed. Under these circumstances there is no ground for a claim of estoppel.

It is unnecessary to consider the other points made by appellant.

The judgment and order appealed from are reversed.

Angellotti, J., concurred.

SHAW, J., concurring.—I concur solely because, under the decision in *Tolman* v. *Smith,* 85 Cal. 280, [24 Pac. 743], and other cases cited in the opinion of Judge Sloss, it had become settled law that the presumption was that property conveyed to the wife with the knowledge and consent of the husband was community property, that the fact that the conveyance was so made to her with his consent did not raise an inference that it was intended by him as a gift to her, or, at all events, that such inference was not sufficient to overcome the said presumption, that this had become a rule of property and that the amendment of 1889 (Stats. 1889, p. 328), to section 164 of the Civil Code, declaring that a conveyance to the wife should be pre-

sumptive evidence that the property conveyed is her separate estate, is not retroactive and does not apply to conveyances previously made. Were it an original question, I should say the rule, prior to the amendment, should have been that such conveyance to the wife with the husband's consent was *prima facie* evidence that he intended the property to be a gift to her, and that the property thereby vested in her as her separate estate, that this was a rule of evidence and that the effect and purpose of the amendment of 1889 was to declare the correct rule of evidence and abrogate the false rule previously followed by the courts, and, hence, that said amendment was applicable to prior transactions and was so intended. If the law had not thus been settled it seems clear that the natural inference that a gift was intended, arising from the conveyance to the wife in this case, would be presumptive evidence thereof and would support the conclusion of the trial court, notwithstanding the testimony of the husband, manifestly to his interest, that it was not so intended.