HENRY W. OLIVER

*v.*

SARAH OLIVER *et al.*

*Filed at Mt. Vernon April 2, 1894.*

1. DEED—*delivery necessary.* Although a deed may be duly executed and acknowledged, it can not be regarded as valid and operative to pass title unless it has been delivered by the maker to the grantee; and the burden of proof rests upon the grantee to establish, not only the execution, but the delivery of the deed.

2. If a deed is at any time delivered to the grantee therein, with the intention of passing the title to the land, the requirement of the law will be fully complied with, and the subsequent possession of the deed by the grantor, or its destruction by him, will not destroy its validity.

3. The fact that a grantee in a deed may, after its execution, take it in his hands, will not, of itself, establish a delivery, nor will the fact that a deed is taken by the grantee from the custody or possession of the grantor, after its execution, constitute a delivery.

4. No particular form is necessary to constitute a valid delivery. It may be by acts without words, or by words without acts, or by both. Anything which clearly manifests the intention of the grantor and the person to whom it is delivered, that the deed shall presently become operative and effectual, constitutes a sufficient delivery. If the grantor loses all control over the deed, and by it the grantee is to become possessed of the estate, the delivery will be sufficient.

APPEAL from the Circuit Court of Jefferson county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

Mr. ALBERT WATSON, for the appellant:

There being no evidence to rebut the presumption of the delivery of the deed, the deed is presumed to have been delivered on the day of its execution. *Blake* v. *Fash,* 44 Ill. 302; *Smiley* v. *Fries,* 104 id. 416.

No formal delivery of a deed from father to son is necessary, and less strictness in formalities is required in case of voluntary settlement, where the parties place great confidence in each other, than in the ordinary case of bargain and sale. *Walker* v. *Walker,* 42 Ill. 311; *Reed* v. *Douthit,* 62 id. 348.

If a deed is found in possession of the grantee, delivery is presumed, and is not thereafter necessary to be proven. Parsons on Bills and Notes, 49; *Reed* v. *Douthit,* 62 Ill. 348; *Tunison* v. *Chamblin,* 88 id. 378; *Griffin* v. *Griffin,* 125 id. 434; *Price* v. *Hudson,* id. 285; *Weber* v. *Christen,* 121 id. 94; *Hill* v. *Hill,* 119 id. 242.

The death of James Oliver made it impossible, of course, for appellant to testify upon the question of delivery and acceptance, but his acceptance of a deed beneficial to himself will be presumed, in the absence of proof of dissent. *Moore* v. *Flynn,* 135 Ill. 74.

The intention of the parties is the essence of the delivery. *Bryan* v. *Wash,* 2 Gilm. 557.

Upon the question of consideration for the deed, the evidence is to the effect that James Oliver said the conveyance was to pay Henry for what he had done for him; but the con-

sideration of natural love and affection will support a convey-
ance from father to son, even in contradiction of the expressed
consideration, where there is no fraud upon creditors. *Young*
v. *Young,* 113 Ill. 430.

     Messrs. ANDERSON & FARTHING, for the appellees:

The burden of proof is upon appellant to prove the execu-
cution and delivery of the deed to the land in question. The
evidence in this case upon the making and acknowledgment of
the deed is very meagre, by reason of the lapse of time, there
being but one witness upon that point, and the evidence ut-
terly fails to prove a delivery, but, upon the contrary, shows
that James Oliver never did make a delivery, but retained the
possession of the deed. That the grantor must part with the
absolute control and possession of a deed by delivering it to
the grantee with intent to pass title, see *Weber* v. *Christen,* 121
Ill. 91; *Price* v. *Hudson,* 125 id. 284; *Wiggins* v. *Lusk,* 12 id.
132; *Wormley* v. *Wormley,* 98 id. 544; *Jordan* v. *Davis,* 108
id. 336; *Whitaker* v. *Miller,* 83 id. 381.

If the grantee obtains possession of a deed without consent
of the grantor, or if he should not intend it to operate as a
conveyance, no title passes. *Robinson* v. *Robinson,* 116 Ill.
250; *Sands* v. *Sands,* 112 id. 225.

However, conceding the execution and delivery of the deed
in question, the evidence shows that the conveyance was made
more than twenty years prior to the commencement of this
suit, and hence is barred by the Statute of Limitations.
Starr & Curtis' Stat. chap. 83, sec. 1.

Counsel for appellant seeks to avoid the bar by alleging a
contemporaneous parol agreement that the grantor should
retain the possession and occupancy of the premises during
his life, and that the possession was not adverse, but per-
missive; but such parol agreement, if it existed, comes within
the Statute of Frauds, and is void. *Holmes* v. *Holmes,* 49 Ill.
31; Starr & Curtis' Stat. chap. 59, sec. 2.

Parol evidence can not be admitted to show that at the time of the delivery of the deed there was a verbal agreement between the parties that the grantor was to retain possession of the premises and the deed not take effect until his death. *Railroad Co.* v. *Fitzgerald*, 17 Ill. App. 525; *Hume* v. *Taylor*, 63 Ill. 43.

Appellant's right, if any ever existed, is lost by reason of his *laches.* He ought to have taken steps to perfect his title before the death of the grantor, as the evidence shows he was cognizant of the loss of the alleged deed. The proof of appellant's right of relief rests solely upon parol evidence. One of the parties to the original transaction is dead. In such case the equitable remedy is barred, although the full time may not have elapsed which would be required to bar any remedy at law. *Haff* v. *Haff*, 54 Mich. 511; *Spaulding* v. *Farenell*, 70 Me. 17; *Lawrence* v. *Roker*, 61 id. 38; *Phillips* v. *Rogers*, 12 Metc. 405; *Sullivan* v. *Railroad Co.* 94 U. S. 806; *Hall* v. *Clagett*, 48 Md. 223; *Castner* v. *Walrod*, 83 Ill. 171.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Henry W. Oliver, against Sarah Oliver and others, widow and heirs-at-law of James Oliver, deceased, to quiet title to the north-west quarter of the south-east quarter of section 12, township 4, south, range 2, east, in Jefferson county. The complainant alleged in the bill that he acquired title about April 15, 1873, by deed duly executed by his father, James Oliver, and wife, Cinda, both now dead; that the consideration was natural love and affection, and services rendered by complainant while an adult single man living with his father; that by parol agreement James Oliver was to, and did, occupy the land until his death, which occurred November 17, 1892; that the deed was never recorded, and is lost or destroyed, and prays that the title be adjudged to be in complainant, and for general relief. Sarah

35—149 ILL.

Oliver, widow of James Oliver, in her answer, denies the execution and delivery of the alleged deed, claims dower in the premises, and a lien upon the same to pay the balance of the widow's award; pleads the Statute of Limitations, and alleges *laches* on the part of complainant. The minor defendants answer by guardian *ad litem.* The other defendants, who are heirs of James Oliver, make default. Upon the hearing, on the pleadings and evidence, the court entered a decree dismissing the bill, to reverse which the complainant appealed.

James Oliver was married three times. The complainant was a son of the first marriage. He purchased the land in 1869, and resided upon it until about two years ago, when he moved to Mt. Vernon, and soon thereafter died. We think it is plain, from the evidence, that in 1873 James Oliver executed a deed which purported to convey the land to Henry W. Oliver, the complainant. John Kirk testified that some time in the "seventies" he saw a deed from James to Henry. James then lived on the land, and Henry, a single man, lived with his father. The witness states that he was at the home of James, and Henry got the deed out of a trunk and showed it to him. Andrew Kirk testified that in 1874 he saw the deed. His wife, who was a daughter of deceased, got the deed out of a trunk at the home of deceased and read it to the witness. Complainant was then residing with his father. Harriet Jane Sweeton testified that the deed was made at her house and was acknowledged before her husband, who was a justice of the peace. Francis A. Oliver, a brother of complainant, testified that twenty years ago James Oliver stated to him that he had deeded the land to Henry Oliver. From the foregoing evidence the fact that James Oliver executed a deed to the complainant seems to be fairly established.

But conceding that the deed was executed, it can not be regarded as a valid instrument, under which the title to the land would pass, unless it was delivered to the grantee, and it is claimed that the evidence fails to show that the deed was

delivered. The burden of proof rested upon the complainant to establish, not only the execution, but the delivery of the deed. It appears from the evidence that Henry Oliver resided with his father until November 4, 1874, when he was married, and from that date he never afterwards resided with his father. When he left his father's place he did not take the deed with him, but the deed was left with the father, where it had been from the day it was executed, and there it remained until it was destroyed by the father, or his wife, Sarah Oliver. If the deed had been delivered to the complainant when it was executed, or at any time subsequent, by the grantor, with the intention of vesting the title to the land in the grantee, why was it left at the home of the grantor, and in his custody, when the complainant, in 1874, left his father's place and acquired a residence for himself? We find no explanation of this fact in the record. On the other hand, the leaving of the deed with the grantor, unrecorded, was consistent with the fact that he had never consented that the deed should pass out of his possession. It is true, if the grantor had, at any time after the deed was executed, delivered it to complainant with the intention of passing the title in and to the land to him, the requirements of the law would be fully complied with, and the subsequent possession of the deed by the grantor would not destroy its validity, nor would the subsequent destruction of the deed, had it been delivered, deprive the grantee of title.

The deed, as appears from the evidence, was in the hands of the complainant, on one occasion, at the home of the grantor, in 1873. The complainant took the deed from a trunk in the house and showed it to the witness, but there is no evidence that the trunk in which the deed was kept belonged to complainant. This occurred at the residence of the grantor, and in the absence of proof it will be presumed that the trunk where the deed was kept belonged to him, and that the deed was in his custody. The fact that a grantee in a

deed may, after the execution of the instrument, take it into his hands, does not, of itself, establish a delivery. Nor would the fact that a deed was taken by the grantee from the custody or possession of the grantor, after its execution, constitute a delivery. No particular form is necessary to constitute a valid delivery. It may be by acts without words, or by words without acts, or by both. Anything which clearly manifests the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual,—that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate,—constitutes a sufficient delivery. (*Bryan* v. *Wash*, 2 Gilm. 557; *Gunnell* v. *Cockerill*, 84 Ill. 320.) But the evidence in this record fails to establish a delivery under the rule indicated. Moreover, as appears from the evidence, as late as 1885 or 1886 Henry W. Oliver called on T. H. Dalby, who desired to purchase a twenty-acre tract of land belonging to James Oliver, and endeavored to consummate an arrangement under which Dalby should purchase of James Oliver the twenty-acre tract and he would purchase the forty acres in controversy. If the complainant had acquired title to the forty-acre tract in question under the execution and delivery of the deed of 1873, why should he attempt to buy the same land in 1885? This act, of itself, (and it is not denied by complainant) is so inconsistent with the theory that he had acquired title under the deed of 1873, that it can not be adopted.

The decree of the circuit court will be affirmed.

*Decree affirmed.*