ALLEN, Judge.
The appellants were the plaintiffs below in a declaratory judgment proceeding against the defendant-appellee seeking to establish a trust and for qualification of trustees. They appeal a final decree which held that no trust had been created.
Joe Valdes owed Manuel Muniz $2,500, which Valdes had borrowed from Muniz. Muniz died intestate on August 15, 1958. During the lifetime of Muniz, Valdes offered to repay the debt and Muniz orally stated:
“No. Don’t pay me now. I don’t need the money. You keep the money, if I need it I’ll ask for it and if anything happens to me use it to educate my grandson, Georgy.”
The complaint alleged the foregoing facts and further alleged that the loan and repayment agreement were oral and not evidenced by any writing, note, mortgage, or other security. Paragraph 1 of the complaint continues:
“ * * * No part of said loan has been repaid. The estate of Manuel Muniz has been probated in the County Judge’s Court in and for Hillsborough County, Florida and the defendant, Sarah Dora Muniz, was Administra-trix of his said estate and has long since been discharged.”
It is further stated in Paragraph 2 of the complaint:
“ * * ‡ George Henry Garcia, a minor, and the defendant, Sarah Dora Muniz, are the sole heirs at law of Manuel Muniz, the grandfather of the said minor and the natural father of Sarah Dora Muniz. Sarah Dora Muniz, as Administratrix, was never advised by the plaintiffs or either of them of said trust fund or loan transaction and only lately the plaintiff, Joe Valdes, orally advised the plaintiff, George Garcia, and on-one else of said loan and trust agreement between him and the said Manuel Muniz, now deceased.”
The answer to the petition admits the allegations hereinabove set forth in the complaint but contends that the allegations of the petition are legally insufficient to create a trust for the benefit of the said grandson and alleges that the said sum of $2,500 is part of the undistributed assets of the estate of Manuel Muniz.
It will be observed that Valdes, the plaintiff, was indebted to Muniz and that Muniz remained at all times a creditor of Valdes.
*878 The able trial judge, in his final decree, among other matters, stated:
“ * * * This statement by Muniz was not made in contemplation of death from present illness or some impending peril. All parties concede that it was not a gift causa mortis.
“Counsel for petitioners argue that a trust was created for the benefit of George Henry Garcia, minor grandson of Muniz. The defendant, Sarah Dora Muniz, contends that no trust was created and that the $2500.00 constitutes a part of the undistributed assets of the estate of Manuel Muniz, deceased. Both parties submitted briefs in support of their position and after due consideration of same the Court finds that the oral declaration of Manuel Muniz, deceased, was insufficient to create a trust and was an attempted testamentary disposition which failed because of the failure to comply with the Florida probate law.
“IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that no trust was created by the oral declaration of Manuel Muniz during his lifetime, but that same was an attempted testamentary disposition which failed because of the failure to comply with the Florida probate law.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the $2500.00 held by Joe Valdes, d/b/a Spanish Park Restaurant, constitutes a part of the undistributed assets of the estate of the deceased, Manuel Muniz.”
The appellants cite the case of Seymour v. Seymour, Fla.1956, 85 So.2d 726, to sustain their position that the lower court committed error in not holding the transaction set forth above as a trust. In Seymour v. Seymour, the Florida Supreme Court, in an opinion by Mr. Justice Hobson, construed a transaction whereby Euphemia Seymour opened a savings account and the signature card bore the statement: “Eu-phemia Seymour in trust for Felton Seymour.” The passbook bore an identical statement. Felton Seymour was Euphemia Seymour’s son. Euphemia Seymour died leaving $2,055.34 in the account, which the administrator claimed as part of the estate of Euphemia Seymour but Felton Seymour petitioned for a decree declaring that he was entitled to the monies on deposit in this account. The Supreme Court held that under the factual situation the deposit was a typical “Totten trust.” The Court quoted from the case of In re Totten, 179 N.Y. 112, 71 N.E. 748, 752, 70 L.R.A. 711, as follows:
“ ‘A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.’ (Emphasis added.)”
The Court further stated in the Seymour case:
“Nothing in Cerny v. Cerny, 152 Fla. 333, 11 So.2d 777, pertaining to a joint account, is inconsistent with this result. The considerations here are different, and it appears that Euphemia Seymour unequivocally expressed an intention to create a trust and took no steps during her lifetime, revealed by this record, which would rebut the presumption which arose by virtue of her initial act.”
The facts in this case are rather unusual. Valdes, the debtor, owed Muniz $2,500, thus a creditor-debtor relation existed between these two. Valdes never paid this *879 debt, although he offered to do so, according to the complaint, but Muniz stated, “No. Don’t pay me now. I don’t need the money. You keep the money, if I need it I’ll ask for it and if anything happens to me use it to educate my grandson, Georgy.”
Valdes could not be held as a trustee for “Georgy” as long as Muniz was alive. In addition Muniz could have asked for all of the money or any part of it at any time, thus the fund, if contemplated as a trust, was indefinite.
In Hanson v. Denckla, Fla.1956, 100 So.2d 378, our Supreme Court held that where a purported trust instrument provided that the trustor should receive all of the net income of the trust for life, and in addition reserve to herself various powers over the trust, that the trust was illusory and there was, as to the remainderman, an attempted testamentary disposition, which was invalid. The Court, in its opinion, page 383, states:
“Although any of these reservations of power in the settlor, standing alone, might not have been enough to render the trust invalid, cf. Williams v. Collier, 120 Fla. 248, 158 So. 815, 162 So. 868, wherein we upheld a revocable trust reserving a life interest to the set-tlor, with remainder payable to named grandchildren, the cumulative effect of the reservations was such that the relationship established divested the set-tlor of virtually none of her day-to-day control over the property or the power to dispose of it on her death, and the trust was illusory. See Burns v. Turnbull, 294 N.Y. 889, 62 N.E.2d 785; In re Tunnell’s Estate, 325 Pa. 554, 190 A. 906; In re Shapley’s Deed of Trust, 353 Pa. 499, 46 A.2d 227, 164 A.L.R. 877; In re Hurley’s Estate, 17 Pa.Dist. & Co.R. 637; Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829; Steinke v. Sztanka, 364 Ill. 334, 4 N.E.2d 472. In Scott, Trusts and the Statute of Wills, 43 Harv.L.R. 521, 529, the author states:
. “ ‘Suppose that the settlor reserves not merely a life interest and a power to revoke the trust in whole or in part and to modify the trust, but reserves also a power to control the trustee in the administration of the trust. In such a case, there is authority to the effect that the trust is in substance testamentary and is invalid unless declared in an instrument executed in accordance with the requirements of the Statute of Wills.’
“Another common principle is reflected in Restatement of Trusts, Sec. 56, which reads as follows:
“ ‘Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.’ ”
In Wilce v. Van Anden, 248 Ill. 358, 94 N.E. 42, the Supreme Court of Illinois held void the fourth clause of the fifth paragraph of the will that provided that after the death or remarriage of his wife, and after the death of his daughter, the trustees “may give such part or portion” of the remaining estate “as they may think best and proper to any one or more of my brothers or sisters that may stand in need of the same, in the judgment of my said trustees, and the remainder thereof shall be devoted by said trustees, in their discretion, to the advancement of the cause of temperance or in aid of one or more manual training schools in said city of Chicago.”
In holding this deposition void, the Illinois Supreme Court stated, 94 N.E. on page 44:
“First. Because it is uncertain that there will be any part of the fund remaining at the death of the annuitants in the hands of the trustees, as at that time it may be entirely exhausted in the payment of the annuities. The case of *880 Mills v. Newberry, 112 Ill. 123, 1 N.E. 156, 54 Am.Rep. 213, is a case in point. The court in that case had the will of Julia Newberry under consideration. The clause in question was: ‘In event I die unmarried, leaving my mother surviving, I devise and bequeath to her all my property, both real and personal, of every kind and nature, upon the express condition, however, that she devise, by will to be executed before receiving this bequest, so much thereof as shall remain undisposed of or unspent at the time of her decease, to such charitable institution for women in said city of Chicago as she may select.’ Julia Newberry died unmarried, and her mother declined to execute the will upon which the bequest was conditioned. She therefore took nothing under the will, and the question was, Where would the property bequeathed by the will go? To the mother, as heir at law, or to the charitable uses mentioned in the will? This court held the language used was amply sufficient to create a trust for a charitable use, but that the subject of the trust was too indefinite to be executed. Among other things, the court said: ‘But an insuperable difficulty which we find to be in the way of the present proceeding is the uncertainty as to the subject-matter of the trust attempted to be asserted. The subject is so much of the property as shall remain undisposed of or unspent at the time of the decease of Mrs. Newberry. The property having been previously given to her absolutely, we construe the above as giving her the full power of expenditure and disposition of the property during her lifetime. What, then, is there to which a trust can now attach, which a court of equity can now take hold of and administer as trust estate? Evidently nothing. It is not the whole property, nor is it any particular part of it, for it all must remain with Mrs. Newberry so long as she lives, for her to spend and dispose of. There may or there may not be something remaining undisposed of or unspent by her at the time of her decease. Whether anything at all will be so left is now entirely uncertain. The authorities fully establish that the subject-matter of the supposed trust must be certain.’ * * * ”
In Kuebler v. Kuebler, Fla.App.1961, 131 So.2d 211, the Court said:
“It is well settled that to effectively pass title by gift there must be a surrender of dominion over the res, coupled with the intent then and there to pass title. In other words, there must be an immediate vesting of some interest in the donee, complete and irrevocable. If the donor withholds divestiture it is not a legal gift. A delivery which does not confer the present right to reduce the res into possession of the donee is insufficient. Thus, no gift is consummated where there is delivery to a third person, if it is clear that the third person is holding the property on behalf of the donor, who has no intention of divesting himself of control. If the intention of the donor is that nothing is to vest until his death, the transaction is testamentary in character and will fall unless it conforms with the formal requirements of the law relating to testamentary disposition of property. * * * ” See Webster v. St. Petersburg Fed. Sav. & Loan Ass’n, 155 Fla. 412, 20 So.2d 400.
We find no valid trust was created in the instant case and affirm the lower court.
Affirmed.
SMITH, C. J., and McLANE, RALPH M., Associate Judge, concur.